UNITED STATES of America, Appellee,

v.

David C. TATE, a/k/a Matthew Mark Samuels, Appellant.

No. 86–2122.

United States Court of Appeals, Eighth Circuit.

Submitted February 11, 1987.

Decided July 2, 1987.

R. Steven Brown, Springfield, Mo., for appellant.

Robin James Aiken, Springfield, Mo., for appellee.

Before ROSS and BOWMAN, Circuit Judges, and NANGLE, District Judge.[*]

ROSS, Senior Circuit Judge.[**]

Defendant David C. Tate appeals his conviction by a jury of fourteen counts of federal weapons violations under 26 U.S.C. §§ 5861(d) and 5871 (1982). On appeal Tate argues that the district court[1] erred by failing to exclude evidence of firearms seized from his vehicle without a warrant, and by admitting evidence of defendant's

related state law crime. For the reasons set forth below, we affirm.

## I.

On April 15, 1985, a Missouri State Highway Patrol mobile traffic check was set up on Highway 86 in Taney County, Missouri, by two state highway patrol troopers for the purpose of checking for driver's license, vehicle safety and vehicle registration violations. Appellant's vehicle was stopped by the state troopers and a driver's license check revealed that Tate's license contained an alias and that Tate was wanted by the State of Washington on weapons charges. As the two state troopers approached Tate's van to confront him with this information, Tate opened fire on the troopers with an automatic weapon, killing one officer and severely wounding the other. Tate immediately fled the scene on foot, abandoning the vehicle.

During an initial investigation at the crime scene, Sergeant Tom Martin of the Missouri Highway Patrol discovered through the windows of the van a "Mack 10" type machine gun with shell casings, a box of ammunition, and numerous cartons, boxes and bags all lying in plain view. The officers at the scene were aware that Tate was a member of "the Order," a white supremacist group, and that Tate was known to carry weapons and was considered to be very dangerous. After the initial investigation at the crime scene, Tate's van was towed to the Taney County, Missouri, sheriff's office where a warrantless search of the van revealed numerous automatic weapons, ammunition, hand grenades, and kinetic explosives. Following an extensive one week manhunt, Tate was captured several miles from the scene of the shootings.

Tate was subsequently tried and convicted of murder and assault in state court in connection with the attack on the two state

---

[*] The HONORABLE JOHN F. NANGLE, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

[**] The Honorable Donald R. Ross was an active judge of the Eighth Circuit on the date this case was submitted, but took senior status on June 13, 1987, before the decision was filed.

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

troopers. He was also indicted by a federal grand jury on fourteen counts of federal weapons violations as a result of the firearms and explosives found inside his van. Following a jury trial, Tate was convicted on all fourteen counts of the indictment.

## II.

Appellant argues that the district court erred in overruling his motion to suppress evidence of the firearms taken from his van without a search warrant. Tate first argues that the warrantless search was illegal under Missouri law, MO.REV.STAT. § 43.200 (1986), which limits the warrantless search and seizure power of a member of the state highway patrol except when incident to an arrest. Tate argues that because no arrest was made in connection with the search of the van, the search was conducted in direct contravention of state law and the evidence should therefore have been suppressed.

■ Appellant's reliance on state law is unfounded. In a federal prosecution, the legality of a search and seizure is not determined by reference to a state statute, but rather is resolved by fourth amendment analysis. *Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 790, 17 L.Ed.2d 730 (1967). In *United States v. Ross,* 713 F.2d 389, 393 n. 7 (8th Cir.1983), this court held that the question "[w]hether evidence obtained by state officers and used against a defendant in a federal trial was obtained by an unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers." Moreover, in *United States v. Eng,* 753 F.2d 683, 686 (8th Cir.1985), this court held that a search and seizure in violation of MO.REV.STAT. § 43.200, the statute at issue here, did not require the exclusion of the evidence seized.

Applying constitutional analysis, the district court in the instant case rejected appellant's allegations of fourth amendment violations stating that appellant had abandoned his expectation of privacy in the van and its contents when he fled from the scene of the shootings leaving the van on a public highway with the windows down and the doors unlocked.

■ Before a party can claim the protections of the fourth amendment, he must establish a legitimate expectation of privacy in the object searched. Although once having had that expectation, it may later be abandoned. *United States v. Biondich,* 652 F.2d 743, 745 (8th Cir.), *cert. denied,* 454 U.S. 975, 102 S.Ct. 527, 70 L.Ed.2d 395 (1981). The Eighth Circuit has ruled on similar facts that a suspect who flees an unlocked vehicle parked on a public roadway thereby abandons his expectation of privacy. *United States v. Walton,* 538 F.2d 1348, 1354 (8th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 647, 50 L.Ed.2d 628 (1976). Appellant, in the instant case, had denied any ownership of the van. Neither the vehicle identification number nor the license plates on the van indicated that the van or its contents belonged to Tate. When Tate fled the scene of the murder, leaving the van unoccupied and unlocked, he abandoned his expectation of privacy in the van and its contents.

The government also argues that even if Tate had an expectation of privacy in the van and its contents, the search was reasonable under the fourth amendment. In *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court held that once officers have probable cause to believe a vehicle contains contraband, they may conduct a search of the vehicle, including containers therein, that is as broad, and no broader, than the scope of a search which would be authorized by a warrant issued on probable cause. *Id.* at 823, 102 S.Ct. at 2172.

■ Here, as in *Ross,* the police had probable cause to search the vehicle itself. The evidence showed that when the officers arrived at the scene they observed the assault which had occurred. They were aware the appellant, armed with a machine gun and silencer, had abandoned the van. They observed in plain view inside the van another machine gun, ammunition and shell casings. The officers knew that appellant was wanted by the State of Washington on felony charges and was a member of "the

Order," a violent group known to carry weapons and explosives. Clearly, under these facts, the officers had probable cause to search the van.

Finally, appellant argues that even if a search of the van would have been reasonable at the scene of the crime, the actual search which took place at the county sheriff's office five hours later was too remote in time and was therefore unreasonable. The Supreme Court, however, has held that "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3080, 73 L.Ed.2d 750 (1982).

Under any one of these legal theories, the warrantless search of appellant's van was not conducted in contravention of the fourth amendment.[2]

### III.

As a separate basis for relief, appellant argues that the district court erroneously denied his motion to exclude from the trial evidence of the state trooper's murder. Appellant contends that the district court erroneously admitted evidence of "other crimes" tending only to show bad character. Appellant argues the evidence of the shootings was cumulative and irrelevant and because its probative value was outweighed by its prejudicial effect, the evidence should have been excluded under either FED.R.EVID. 404(b) or 403.

FED.R.EVID. 404(b) states that evidence of "other crimes, wrongs, or acts" is not admissible to prove character, but is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Stated differently, evidence of prior wrongful acts is admissible under Rule 404(b) if "(1) the evidence is relevant to an issue other than the defendant's character, (2) there is clear and con-

vincing evidence that the defendant committed the other acts, and (3) the potential unfair prejudice does not outweigh its probative value." *United States v. DeLuna,* 763 F.2d 897, 912–13 (8th Cir.1985).

This court has also approved the admission of evidence of other crimes where such evidence is " 'so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged.' " *United States v. Bass,* 794 F.2d 1305, 1312 (8th Cir.1986) (quoting *United States v. Derring,* 592 F.2d 1003, 1007 (8th Cir.1979)). In such a case the evidence of the other crime is not considered extrinsic evidence and Rule 404(b) is not implicated.

■ Working within this legal framework, this court finds that the district court did not err in admitting evidence of the shootings of the state troopers. The challenged evidence constituted an integral part of the operative facts of the crime charged and as such was not excludable under 404(b). Appellant's arrest and subsequent conviction of federal weapons violations arose directly from the Highway 86 traffic check and concurrent shootings of the two state troopers. The government would have been hard pressed to explain the factual circumstances of its case without mention of the shootings. The machine gun and silencer used to shoot the two state troopers were the subjects of counts thirteen and fourteen of the indictment. Trooper Hines, the officer who survived the shooting, identified Tate at trial. Adequately explaining the circumstances of both the seizure of these weapons and the identification by Trooper Hines necessarily required reference to the shootings. As such, evidence of the shootings of the state troopers was admissible as an integral part of the overall criminal transaction.

■ Alternatively, the challenged evidence was admissible under 404(b) because

**2.** The government might also have characterized the challenged search of the van as an inventory search under *Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). This argument will not be discussed in length, however, as it was not addressed below.

it was probative of the elements of the crime charged. The charged offense in the instant case was the possession of firearms which had not been registered in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d). In order to prove its case the government was required to show that Tate knowingly possessed the weapons in the indictment. Certainly, the actual use of the weapons, i.e., the shootings of the state troopers, was relevant to the question of whether Tate knowingly possessed them. Therefore, because the evidence was probative of an issue in the case other than Tate's criminal propensity, the evidence was admissible under 404(b). *See United States v. Boykin*, 679 F.2d 1240, 1244 (8th Cir.1982).

The application of Rule 404(b) is limited, however, by Rule 403, which requires exclusion of evidence, even when relevant, if its probative value is substantially outweighed by the danger of undue prejudice. In this decision, great deference is given to the trial court and the decision will not be overturned absent a showing of an abuse of discretion. *United States v. Bass, supra*, 794 F.2d at 1312–13.

In the instant case, the contested evidence was probative of material elements of the charged offense and was closely connected with the entire criminal transaction. Additionally, the evidence was allowed by the court in a carefully circumscribed fashion in order to avoid any unfair prejudice. We therefore conclude that the district judge did not abuse his discretion in admitting this evidence.

We have also considered appellant's challenges to the admission into evidence of certified documents prepared by the U.S. Treasury Department, Bureau of Alcohol, Tobacco and Firearms. These documents certified that after diligent search, no record was found to show that the firearms were registered to David Charles Tate or his alias Mark Matthew Samuels. We find that appellant's argument that a diligent search was not performed due to the failure to search variations of his name and his alias is without merit. We also reject the claim that the district court erred by refusing to allow appellant's mother to testify concerning his views on gun control. Clearly, such evidence is hearsay and is irrelevant to any issue in the case. Finally, we reject appellant's claim that the district court erred in admitting into evidence two television video tapes, one an interview given by appellant wherein he stated he knew the illegal weapons were in the van, and the other a tape of the test firing of the weapons charged in the indictment. We find no abuse of discretion in the admission of this evidence at trial.

Accordingly, we affirm the judgment and order of the district court.