STATE OF NEBRASKA, APPELLEE, V.
DANIEL E. SMITH, APPELLANT.
678 N.W.2d 733

Filed April 29, 2004.   No. S-02-1482.

918

Jerry J. Fogarty and John C. Jorgensen, Deputy Hall County Public Defenders, for appellant.

Jon Bruning, Attorney General, and Kevin J. Slimp for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Daniel E. Smith seeks further review of the Nebraska Court of Appeals' decision affirming his convictions for terroristic threats and use of a deadly weapon to commit a felony. The sole issue presented is whether the district court should have instructed the jury upon third degree assault under Neb. Rev. Stat. § 28-310(1)(b) (Reissue 1995) as a lesser-included offense of terroristic threats under Neb. Rev. Stat. § 28-311.01(1)(a) (Reissue 1995).

## BACKGROUND

On June 3, 2002, Smith and his wife, Tamera Smith (Tamera), were living in Grand Island, Nebraska, with their 15-year-old son. When Tamera came home from work that evening, Smith asked her what she would like for supper. Tamera told Smith that he should decide and, because he had been home all day, that he should be able to have supper ready when she arrived home from work. Smith was angered by her comments, and an argument ensued. During the argument, Smith went to the kitchen and got an 8-inch chef knife from a butcher block. With

the knife in hand, Smith then began to go toward Tamera, who retreated to the bathroom. At the same time, Tamera called out to her son, saying that he should call the police, which he did.

As Tamera was holding the bathroom door closed and attempting to lock it, Smith yelled that he was going to kill her. Smith then stabbed the knife into the door. The knife went through the door and emerged on the other side just above Tamera's head. Smith continued to bang on the door, eventually breaking through it and into the bathroom. Smith then began to push Tamera backward (he no longer held the knife) while Tamera pleaded with him to consider their children. Smith again threatened to kill Tamera, but she was eventually able to get past Smith and ran into her bedroom. Tamera then attempted to reason with Smith, telling him that they could discuss the situation like adults. However, Smith remained angry, went back into the kitchen and got another knife from the butcher block. Tamera was able to escape from the house and ran next door to the neighbor's house. Soon thereafter, two Grand Island Police Department officers arrived at the Smith home and took Smith into custody. At trial, Smith admitted to stabbing the knife through the bathroom door but was unable to remember exactly what he said during the incident. He further testified that he had no intention of terrorizing Tamera and that he "just wanted to make her stop."

Smith was charged with one count of terroristic threats in violation of § 28-311.01(1)(a), a Class IV felony, and one count of use of a deadly weapon to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1995), a Class III felony. A jury trial was held. During the jury instruction conference, Smith objected to the district court's failure to instruct the jury that third degree assault under § 28-310(1)(b) was a lesser-included offense of terroristic threats. The objection was overruled. The jury returned guilty verdicts against Smith on both counts. He was sentenced to 36 months of intensive supervision probation.

Smith asserted several errors on appeal, including that the jury should have been instructed upon third degree assault as a lesser-included offense of terroristic threats. The Court of Appeals affirmed his conviction. *State v. Smith*, No. A-02-1482, 2003 WL 22769284 (Neb. App. Nov. 25, 2003) (not designated for permanent publication). We granted Smith's petition for further review.

## ASSIGNMENT OF ERROR

Smith's sole assignment of error is that the district court failed to instruct the jury upon third degree assault as a lesser-included offense of terroristic threats.

## STANDARD OF REVIEW

■ Whether jury instructions given by a trial court are correct is a question of law. *State v. Putz*, 266 Neb. 37, 662 N.W.2d 606 (2003). When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *Id.*

## ANALYSIS

■ The test adopted by this court to determine whether one crime is a lesser-included offense of another is a statutory elements test in which a court looks to the statutory elements of each crime rather than the particular facts of a specific case. *State v. Putz, supra; State v. Williams*, 243 Neb. 959, 503 N.W.2d 561 (1993) (abandoning cognate evidence approach for determining what constitutes lesser-included offenses in favor of statutory elements approach). Smith invites us to utilize the old cognate evidence test in this and future cases. We have declined such invitations since *State v. Williams* was decided, see *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997), and do so again here.

■ In order to be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. *State v. Williams, supra*. Otherwise stated, a lesser-included offense is one which is fully embraced in the higher offense. *Id.* Once it is determined that an offense is a lesser-included one, a court must examine the evidence to determine whether it justifies an instruction on the lesser-included offense by producing a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the lesser offense. *State v. Williams, supra*. Consequently, a court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for

acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Williams, supra.*

Nebraska's terroristic threats statute, § 28-311.01, provides in relevant part: "(1) A person commits terroristic threats if he or she threatens to commit any crime of violence: (a) With the intent to terrorize another." A person commits third degree assault in relevant part if he or she "[t]hreatens another in a menacing manner." § 28-310(1)(b). Each crime shares one element: a threat. See *State v. Schmailzl,* 243 Neb. 734, 502 N.W.2d 463 (1993) (collecting cases describing meaning of words "threat" and "threaten" in § 28-311.01(1)).

In addition to a threat, § 28-311.01(1)(a) requires that the threat to commit a violent crime be made "[w]ith the intent to terrorize another." Section 28-310(1)(b) requires that the threat be made "in a menacing manner." Our prior cases have explained "intent to terrorize another" and "menacing" in greater detail.

In *State v. Schmailzl, supra,* we stated that § 28-311.01(1)(a) prohibits a threat to commit a violent crime when the threat is made with the intention of causing "a state of intense fear in another." *State v. Schmailzl,* 243 Neb. at 741, 502 N.W.2d at 467. In the same opinion, we also equated the intent to terrorize another with the "production of anxiety in another." *Id.* at 742, 502 N.W.2d at 468. Thus, the intent to terrorize another is an intent to produce intense fear or anxiety in another. However, a critical feature of the statute for purposes of our analysis here is that it merely requires the *intent* to terrorize another. It does not require that the recipient of the threat be actually terrorized, and it does not require an intent to execute the threats made. See *State v. Saltzman,* 235 Neb. 964, 458 N.W.2d 239 (1990).

As used in § 28-310(1)(b), "menacing" includes a showing of an intention to do harm. *State v. Kunath,* 248 Neb. 1010, 540 N.W.2d 587 (1995). Comprehensively stated, "'§ 28-310(1)(b) renders unlawful a promise to do another person bodily harm which is made in such a manner as to intentionally cause a reasonable person in the position of the one threatened to suffer *apprehension* of being so harmed.'" (Emphasis supplied.) *State v. Kunath,* 248 Neb. at 1014, 540 N.W.2d at 591, quoting *In re Interest of Siebert,* 223 Neb. 454, 390 N.W.2d 522 (1986).

The distinction between the intent required by each statute leads us to conclude that § 28-310(1)(b) is not a lesser-included offense of § 28-311.01(1)(a). Section § 28-311.01(1)(a) requires an intent to terrorize another and is not concerned with the result produced by an individual's threat. *State v. Saltzman, supra.* On the other hand, § 28-310(1)(b) is violated when a person acts in a manner that intentionally causes a reasonable person in the position of the one threatened to feel apprehension of being bodily harmed. *State v. Kunath, supra.* Simply put, a violation of § 28-311.01(1)(a) need not produce a result in the victim, while a violation of § 28-310(1)(b) must cause a reasonable person to suffer apprehension of being bodily harmed. Thus, we conclude that a person can commit the greater offense of terroristic threats under § 28-311.01(1)(a) without simultaneously committing third degree assault under § 28-310(1)(b). To the extent that *State v. Powers*, 10 Neb. App. 256, 634 N.W.2d 1 (2001), suggests otherwise, it is disapproved.

## CONCLUSION

The Court of Appeals did not err in upholding the district court's refusal to instruct the jury upon third degree assault under § 28-310(1)(b) as a lesser-included offense of terroristic threats under § 28-311.01(1)(a). As a crime focused upon an individual's intent to terrorize another, it is possible to violate § 28-311.01(1)(a) without committing the crime of third degree assault under § 28-310(1)(b), which occurs when an individual causes a reasonable person to suffer apprehension of being bodily harmed. We affirm.

AFFIRMED.